UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

James Lintner and Mary Embree

     v.                             Civil No. 12-cv-462-JL
                                       Opinion No. 2013 DNH 169

Bank of New York Mellon and
Saxon Mortgage Services, Inc.

**MEMORANDUM ORDER**

Plaintiffs James Lintner and Mary Embree allege that they entered an agreement to purchase real property from defendant Saxon Mortgage Services, Inc., attorney-in-fact for defendant Bank of New York Mellon (the "Bank"), but that Saxon subsequently repudiated the agreement, harming them in the process.  Lintner and Embree seek to hold Saxon and the Bank liable on theories of breach of contract, promissory estoppel, and ratification, and request specific performance of the agreement and consequential damages.  The Bank has moved to dismiss the amended complaint (and Saxon has joined in that motion), arguing that the facts pleaded demonstrate that the parties voluntarily terminated the agreement and that, in any event, its terms expressly limit the plaintiffs' remedy for any breach to return of their earnest money deposit--and the plaintiffs expressly allege their deposit was returned.

This court has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity).  After oral argument and careful consideration of the parties' submissions, the court denies the motion to dismiss. While the plaintiffs indeed sought to terminate the agreement, signing a document to that effect, they allege that the defendants never countersigned it and, instead, assured the plaintiffs that they intended to follow through with their contractual obligations.  Based upon these facts, the court cannot accept the Bank's argument that the parties agreed to terminate the agreement.  Nor can the court, at this juncture, conclude that the agreement limited the plaintiffs' remedy for any and all breaches--including those undertaken deliberately--to the return of their earnest money deposit.  The plaintiffs have proffered a plausible alternative interpretation of the agreement that would limit their remedies to return of their earnest money only in cases where Saxon and the Bank breached the agreement due to circumstances beyond their control--which, based upon the plaintiffs' allegations, was not the case here.

## I.   <u>Applicable legal standard</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must make factual allegations sufficient to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v.

*Twombly*, 550 U.S. 544, 570 (2007)).  In ruling on such a motion, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor.  See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).  The court "may consider not only the complaint but also "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice."  Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009).  With the facts so construed, "questions of law [are] ripe for resolution at the pleadings stage."  Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009).  The following background summary is consistent with that approach.

## II.  **Background**

On or about February 22, 2011, Lintner and Embree signed an agreement to purchase property at 26 Beech Street in Franklin, New Hampshire, from Saxon (as attorney-in-fact for the Bank) for $62,000.  At the time the parties entered into the agreement, the Beech Street property was in the process of foreclosure.  A foreclosure auction (at which the Bank was the high bidder) had occurred in January 2011, but the foreclosure deed had not yet been executed or recorded; the parties expected the closing on their agreement to take place after that happened.  Anticipating

no difficulties in that process, Lintner and Embree secured insurance for the property.

Although the parties initially scheduled the closing for March 18, 2011, the deed still had not been executed or recorded by the time that date arrived, so the parties extended the closing date by another month.  Again, however, the date came and went without the execution or recordation of the deed, and the parties again postponed the closing, this time by two months, to June 25, 2011.  As that date approached, the deed still had not been executed and recorded.  At the invitation of the Bank and Saxon, on June 13, 2011, Lintner and Embree signed a document, titled "Authorization for Release of Escrow," in which they "agree[d] to the termination of the sales agreement, to render same null and void, and to discharge the respective obligations of all parties thereto" (capitalization omitted).  The document also authorized the release of the plaintiffs' earnest money deposit of $5,000, held in escrow pending the closing.

Neither the Bank nor Saxon countersigned the Authorization for Release of Escrow, and instead informed Lintner and Embree that the defendants were not, in fact, seeking to cancel the contract.  The foreclosure deed was finally executed on June 27, 2011 (two days after the last agreed-upon closing date, and two weeks after the plaintiffs executed the Authorization for Release

4

of Escrow).  Throughout 2011, and again in early 2012, the Bank and Saxon assured Lintner and Embree that they were "making progress" in recording the deed, and provided the plaintiffs-- whose earnest money deposit remained in escrow--with projected completion dates for the recording process.

The foreclosure deed was finally recorded in the Merrimack Country Registry of Deeds on May 7, 2012.  The defendants, however, did not notify the plaintiffs that this had occurred. Thus, in late July 2012, Lintner and Embree inquired as to the status of the foreclosure.  At that time, for the first time, Saxon informed them that it did not intend to go forward with the sale.  The plaintiffs demanded specific performance of the purchase and sale agreement, but, on August 30, 2012, their earnest money deposit was returned to them.  The Bank placed the Beech Street property back on the market, and the property is presently under contract for sale to a third party.

Lintner and Embree refused to accept the return of their deposit, again escrowing the funds.  They filed this action in October 2012 seeking specific performance of the purchase and sale agreement, and consequential damages stemming from its breach.

III. **Analysis**

As noted at the outset, the plaintiffs' amended complaint seeks recovery on theories of breach of contract, promissory estoppel, and ratification.  The Bank and Saxon contend that the complaint does not state a plausible claim to relief under any of these theories in light of the express language of the purchase and sale agreement and the parties' conduct.  As regards the plaintiffs' contract and ratification theories, the defendants' arguments are twofold.  They argue, first, that the plaintiffs cannot sue for a breach of the purchase and sale agreement because they agreed, by executing the Authorization for Release of Escrow, to cancel the agreement.  But, even if the agreement neither terminated nor was cancelled, they say, the plaintiffs expressly agreed that their remedy for any breach was limited to return of their deposit so that, having received that remedy, they cannot obtain further relief in this action.

The defendants advance two additional arguments against the plaintiffs' promissory estoppel count.  First, the defendants say, any oral promise they made to sell the property is unenforceable under the statute of frauds.  Second, the defendants argue that even if such a promise is enforceable, the plaintiffs have failed to plead facts sufficient to establish that they relied on the alleged promise to their detriment.  The

6

court will address the defendants' arguments, none of which are availing, in turn.

### A.  *Breach of contract & ratification*[1]

In moving to dismiss the plaintiffs' contract-based claims, the defendants first argue that the plaintiffs cannot recover for a breach of the purchase and sale agreement because the agreement ceased to bind the parties after Lintner and Embree executed the Authorization for Release of Escrow on June 13, 2011.  As related in Part II, <u>supra</u>, the Authorization contained language agreeing "to the termination of the sales agreement, to render same null and void, and to discharge the respective obligations of all parties thereto" (capitalization omitted).

This argument stumbles out of the gate.  An agreement to cancel a contract "is itself a contract" and, like any contract, requires "a meeting of the minds." [Cambridge Mut. Fire Ins. Co. v. Peerless Ins. Co., 152 N.H. 498, 502 (2005)](). Accepting the well-pleaded allegations of the plaintiffs' complaint as true, no such meeting took place.  Although the plaintiffs signed the Authorization, the defendants never countersigned it.  In fact, the complaint alleges, the defendants affirmatively told the

---

[1]Because the defendants' arguments with respect to the breach of contract and ratification counts are essentially the same, the court addresses those counts together.

plaintiffs that they did not want to cancel the contract, and
continued to behave as if they were bound by it by keeping the
plaintiffs apprised of their progress in obtaining and recording
an executed foreclosure deed.  Because the plaintiffs could not
unilaterally cancel the agreement (thereby relieving not only the
defendants, but themselves, of any duty under it) without the
consent of the counterparty--at least in the absence of an
express provision in the purchase and sale agreement to that
effect--their execution of the Authorization had no effect on the
continuing validity of the agreement.[2]

The defendants' alternative argument for dismissal rests on
paragraph 18 of the addendum to the purchase and sale agreement,
which dictates the parties' respective remedies in the event of a

_____

[2]In its joinder in the Bank's motion to dismiss, Saxon
advances the argument that even if the parties did not cancel the
agreement, it terminated on its own terms when the closing did
not occur by the scheduled date.  The Bank also seizes on this
argument in its reply memorandum.  Neither defendant, however,
has identified any provision of the agreement that provides for
its termination if the closing does not proceed as scheduled, and
counsel for both defendants were unable to identify a provision
to that effect at oral argument.  This court endeavored to find
such a provision itself, but the only language it located that
comes close to addressing such a situation is an uneasy fit with
the facts of this case.  While it might nonetheless be possible
to make an argument that one of the agreement's provisions is
applicable, and did serve to terminate the agreement, "[f]ederal
courts will not do counsel's work, and are not obliged to dream
up and articulate parties' arguments for them." Hudson v. Town
of Weare, No. 11-cv-90, 2012 WL 6149523, at *2 (D.N.H. Dec. 11,
2012) (internal quotations, citations, and alterations omitted).
The court will not do so here.

default.  After setting forth Saxon's remedies in the event of
the plaintiffs' default, the paragraph provides that "[i]n the
event Seller [i.e., Saxon] defaults in the performance of the
Contract and this Addendum, Buyer [i.e., the plaintiffs] shall be
entitled to a return of the Earnest Money as Buyer's sole and
exclusive remedy."  This sentence, the defendants say, is a
straightforward and enforceable liquidated damages clause that
"clearly and concisely" limits the plaintiffs' remedies for any
default on the defendants' part to return of their earnest money
deposit.  Because Lintner and Embree have already received their
deposit, the defendants argue, they have gotten precisely what
they bargained for and have no avenue for further recovery in
this action.

        This argument has more to recommend it than the defendants'
argument that the agreement was cancelled.  After all, when
interpreting a contract, courts ordinarily "determine the
parties' intent from the plain meaning of the language used,"
Sabinson v. Trs. of Dartmouth Coll., 160 N.H. 452, 458 (2010),
and the plainest reading of paragraph 18 is, as the defendants
argue, that the plaintiffs' only remedy in the event of a breach
--any breach--is the return of their deposit.  Cf. Goodwin v.
Hole No. 4, LLC, No. 06-cv-679, 2007 WL 2221066, *6 (D. Utah July
31, 2007) (examining similar contractual language); Lespinasse v.

9

Fed. Nat'l Mortg. Ass'n, No. 216TSN/2003, 2003 WL 21448828, *4
(N.Y. Civ. Ct. May 22, 2003) (same).  Given the procedural
posture of this case, however, the court is not yet prepared to
endorse that reading of the parties' agreement.

Courts should, "where possible, avoid construing [a]
contract in a manner that leads to harsh and unreasonable results
or places one party at the mercy of the other," Gamble v. Univ.
Sys. of N.H., 136 N.H. 9, 14-15 (1992); see also Griswold v. Heat
Inc., 108 N.H. 119, 124 (1967), and giving the agreement the
construction urged by the defendants would leave the plaintiffs
at the defendants' mercy.  If the agreement indeed limits the
plaintiffs, as the prospective buyers, to return of their earnest
money deposit as their sole remedy for the defendants' breach,
then the defendants would have the ability to default on their
obligations at any time, for any reason, essentially without
consequence.  In essence, the defendants would have promised
nothing more than to convey the property to the plaintiffs if
they felt like doing so.

The plaintiffs proffer an alternative construction of
paragraph 18 that avoids this concern.  The sentence dealing with
the seller's default, they say, "simply acknowledges the unique
circumstances of this case," i.e., that although the Bank had
purchased the property to be conveyed to the plaintiffs at

foreclosure, no foreclosure deed had been executed or recorded,
meaning that the Bank had not yet taken legal title to the
property.  See N.H. Rev. Stat. Ann. § 479:26, III ("Title to the
foreclosed premises shall not pass to the purchaser until the
time of the recording of the deed and affidavit.").  In light of
those circumstances, the plaintiffs argue, the parties intended
paragraph 18 to define the plaintiffs' remedies if Saxon and the
Bank lacked the ability to convey the property "due to
circumstances outside of [their] control," e.g., if the
foreclosure deed remained unexecuted.  In other words, the
plaintiffs contend that the parties intended the term "default,"
as it is used in paragraph 18, to refer solely to unintentional
defaults by Saxon and the Bank, and not those that could be
avoided through reasonable efforts.

        In advancing this argument, the plaintiffs are not exploring
virgin territory.  In Goodwin v. Hole No. 4, LLC, No. 06-cv-679,
2006 WL 3327990 (D. Utah Nov. 15, 2006), then-Judge Cassell of
the District of Utah examined a clause of a real estate purchase
agreement that was quite similar to paragraph 18.  There, as
here, the plaintiffs were the prospective buyers under the
agreement, and had brought suit seeking damages and declaratory
relief when the defendant announced its intention to repudiate
the agreement.  There, as here, the defendant moved to dismiss,

11

arguing that one of the paragraphs of the agreement--paragraph 16--limited the plaintiffs' remedies to return of their earnest money deposit, which had already taken place.

Judge Cassell declined to adopt the defendant's reading of the agreement.  He noted that the defendant's reading, which "afforded it the option to completely avoid its side of the bargain by simply paying the [plaintiffs'] deposits back," would give the defendant "the right to define the nature and extent of its performance," potentially "mak[ing] its promise illusory." Id. at *4.  Thus, he concluded, "to avoid what would otherwise be a harsh and unreasonable result," it would be "reasonable to construe the contract" in a way that "limit[ed] the effect of paragraph 16 to unintentional defaults."[3]  Id. at *3-4.

This reasoning applies with equal strength to paragraph 18 of the addendum to the purchase and sale agreement in this case. Although the defendants' reading of paragraph 18 is by no means farfetched, it would likewise be reasonable to construe the agreement as limiting that provision's reach to unintentional

---

[3]In so holding, Judge Cassell himself was not exploring virgin territory, as at least one other court had arrived at a similar conclusion.  See Schwinder v. Austin Bank of Chicago, 809 N.E.2d 180 (Ill. App. Ct. 2004) (interpreting similar provision limiting buyer's remedies in the event of seller's breach as applying only to breaches "due to circumstances beyond [the seller's] control," and affirming grant of specific performance to buyer).

defaults.  And, because the allegations of the complaint, taken
as true, could support a conclusion that the defendants' breach
was intentional, and not due to circumstances beyond their
control, the plaintiffs have stated a plausible claim for breach
of contract that would entitle them to relief beyond the return
of their earnest money deposit.

This is not to say that the court has adopted the
plaintiffs' proposed reading of paragraph 18 as the "correct"
one.  Come summary judgment or trial, the plaintiffs may not be
able to proffer evidence substantiating their claims about the
interpretation of the provision.  Indeed, that was the fate that
befell the plaintiffs in Goodwin; Judge Cassell ultimately
granted summary judgment in the defendant's favor, adopting its
construction of the agreement.  See Goodwin v. Hole No. 4, LLC,
No. 06-cv-679, 2007 WL 2221066, *5-8 (D. Utah July 31, 2007).
The plaintiffs may well face a similar fate.  Their reading is,
however, a plausible one, and the court will not choose between
the parties' competing interpretations of the agreement on a Rule
12 motion.  See Young v. Wells Fargo Bank, N.A., 717 F.3d 224,
235-36 (1st Cir. 2013) (where "contract could plausibly be read
in [plaintiff's] favor," plaintiff had "done enough to survive a
motion to dismiss").  The motion to dismiss is denied as to the
breach of contract and ratification counts.

**B.  *Promissory estoppel***

The plaintiffs' claim for promissory estoppel is pleaded in the alternative to their contract claims, and alleges that the plaintiffs relied to their detriment on the defendants' promise of performance under the purchase and sale agreement.  Among other things, the plaintiffs say, they permitted the defendants to retain their earnest money deposit long after the scheduled closing date, expended time and effort developing plans for improvements to the property, and procured property insurance. In moving to dismiss this claim, the defendants argue that it is barred by the statute of frauds, which requires contracts for the sale of real estate to be in writing, and that none of the specific actions plaintiffs allegedly took in reliance upon their promise are sufficient to support a claim for promissory estoppel.[4]  Neither argument is persuasive.

The defendants are correct that N.H. Rev. Stat. Ann. § 506:1, New Hampshire's version of the statute of frauds

---

[4]The defendants also argue that (1) the plaintiffs' reliance on any oral promise to fulfill the agreement was unreasonable in light of their execution of the Authorization for Release of Escrow, which, defendants say, discharged all their parties of their respective obligations; and (2) even if the plaintiffs reasonably believed the defendants would perform under the agreement, they are nonetheless limited in their remedies to those specified in the agreement, i.e., return of their earnest money deposit.  These arguments fail, at least at this stage, for the reasons discussed in Part III.A, <u>supra</u>.

pertaining to real estate contracts, provides that "[n]o action shall be maintained upon a contract for the sale of land unless the agreement upon which it is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person authorized by him in writing."  The plaintiffs' claim for promissory estoppel, however, does not depend upon the theory that there was "a <u>contract</u> for the sale of land."  It is premised upon the alternative theory that, even if there was no contract (because, for example, the purchase and sale agreement had terminated according to its own terms, or had been cancelled by the parties), the defendants promised to fulfill the obligations set forth in the written purchase and sale agreement, and the plaintiffs reasonably relied upon that promise to their detriment.

The <u>Restatement (Second) of Contracts</u>, upon which the New Hampshire Supreme Court relies with regularity, <u>see</u>, <u>e.g.</u>, <u>Livingston v. 18 Mile Point Drive, Ltd.</u>, 158 N.H. 619, 625 (2009); <u>Jackson v. Morse</u>, 152 N.H. 48, 52 (2005), addresses just such a scenario.  It provides:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise.  The remedy granted for breach is to be limited as justice requires.

15

Restatement (Second) of Contracts § 139(1) (1981).  Accepting as true the plaintiffs' allegations, they can colorably argue that "injustice can be avoided only by enforcement of" the defendants' alleged promise.[5]  Thus, at the pleading stage, the court cannot conclude that the statute of frauds bars the plaintiffs' claim for promissory estoppel (although, again, the defendants' argument may well prevail if presented to the court in a different procedural posture).

The defendants' alternative argument--that the specific acts the plaintiffs allege they took in reliance on the defendants' promise are insufficient to support a claim for promissory estoppel--fares no better.  The defendants argue that plaintiffs suffered no detriment from permitting the defendants to retain the earnest money deposit because the deposit was ultimately returned to them.  But, had the plaintiffs not relied upon the defendants' promise, they could have received their deposit back much sooner; in the interim, they lost the ability to use the money for other purposes (or, simply, to earn interest on it).

The defendants also argue that the plaintiffs' allegation that they spent time and effort developing plans to improve the property is a "bald statement with no support" and thus

---

[5]The circumstances relevant to the ultimate success of this theory, which the court need not address at this time, are set forth in Restatement (Second) of Contracts § 139(2) (1981).

insufficient to satisfy Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." This argument rests on an overly stringent view of Rule 8's requirements. The rule does not require "detailed factual allegations"; it simply requires "sufficient factual matter to state a claim to relief that is plausible on its face." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013). The plaintiffs' allegation readily meets this standard. The motion to dismiss is accordingly denied as to the promissory estoppel count.

## IV.   Conclusion

For the foregoing reason, the defendants' motion to dismiss[6] is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:   December 6, 2013

---

[6]Document no. 44.

17

```
cc:  David H. Bownes, Esq.
     Jessica Suzanne Babine, Esq.
     John A. Houlihan, Esq.
     Alexander G. Henlin, Esq.
     Peter G. Callaghan, Esq.
```